UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERARD HOWLEY,

                Plaintiff,                           Civil Action No. 14-CV-11874

vs.                                             HON. MARK A. GOLDSMITH

FEDERAL EXPRESS
CORPORATION,

                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT (Dkt. 23)

## I. INTRODUCTION

Plaintiff Gerard "Tim" Howley was employed by Defendant Federal Express Corporation ("FedEx") for about twenty years.  In 2013, following three disciplinary actions within a 12-month period, Plaintiff's employment was terminated.  Plaintiff subsequently sued FedEx pursuant to Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 et seq., alleging that he was the victim of unlawful age discrimination.  Following discovery, FedEx moved for summary judgment on the lone discrimination claim.[1]  As explained fully below, the Court now grants FedEx's motion for summary judgment, on the grounds that

_____

[1] In his initial response to FedEx's motion for summary judgment, Plaintiff claimed that FedEx refused to produce key witnesses for deposition, which prevented Plaintiff from gathering evidence relative to the non-discipline of younger employees and to the events underlying FedEx's alleged reasons for disciplining and terminating Plaintiff.  Pl. Resp. at 13, 15 (cm/ecf pages) (Dkt. 25).  FedEx vigorously disputed this characterization.  See Def. Reply at 2-4 (Dkt. 28).  Following a telephonic status conference with all counsel, the Court granted Plaintiff a window of time in which to depose seven additional individuals and to file a supplemental brief incorporating relevant testimony in response to the issues raised by FedEx's motion; FedEx was given an opportunity to respond.  See 10/9/2015 Order (Dkt. 30).  Both parties filed supplemental briefs, which the Court has considered in addition to the parties' original motion papers.

1

Plaintiff cannot establish a prima facie case of age discrimination, and, even if he could, no reasonable fact-finder could conclude that FedEx's offered explanations for Plaintiff's termination are mere pretext for age discrimination.

## II. BACKGROUND

Employment with FedEx is governed by policies and procedures as set forth in the "People Manual." Def. Mot. at 2-3 (Dkt. 23); Pl. Resp. at 5 (cm/ecf page) (Dkt. 25). Contained within the People Manual are the "Acceptable Conduct Policy" and the "Performance Improvement Policy." Def. Mot. at 3; Pl. Resp. at 5 (cm/ecf page). The Acceptable Conduct Policy warns employees that they may be subject to "severe disciplinary action up to and including termination," for the following relevant misconduct:

- "Using violent, threatening, intimidating, coercing, or abusive language; engaging in violent, threatening, intimidating, coercing, or abusive behavior; or displaying blatant or public disrespect toward or about any employee . . . while on duty, on Company property, at collection sites, or at off-site Company meetings and functions"; and

- "Leadership failure of a member of management."

Acceptable Conduct Policy, Ex. F (Ex. 52 to Howley Dep.) to Def. Mot., at 30-31 of 58 (cm/ecf pages) (Dkt. 23-7).

A supervising manager may elect to formally discipline the employee with a "warning letter," which serves as a deficiency notification. Id. at 33, 34 of 58 (cm/ecf pages). If disciplinary action is not warranted, a manager may choose to formally counsel the employee regarding acceptable behavior. Id. at 33-34 of 58 (cm/ecf pages). While not disciplinary in nature, formal counseling is documented and tracked using an online system and may be taken into account when determining whether to issue formal discipline. Id. at 34 of 58 (cm/ecf page).

While the Acceptable Conduct Policy "establishes and maintains standards of employee conduct," this is distinct from "the standards that govern job performance," which "relate[ ] to the execution of assigned duties and responsibilities."  Performance Improvement Policy, Ex. E (Ex. 43 to Howley Dep.) to Def. Mot., at 44 of 51 (cm/ecf page) (Dkt. 23-6).  Formal counseling is also available to address performance issues, but if the performance problem is severe or has occurred at least twice in a 12-month period then formal discipline in the form of a "performance reminder" may be issued.  Id. at 46-47 of 51 (cm/ecf pages).

Failure on the part of an employee to improve his or her performance may result in a "decision day" — a day off with pay for the employee to determine whether he or she desires to remain employed at FedEx.  Id. at 48 of 51 (cm/ecf page).  A decision day may be invoked after any two formal disciplinary actions (conduct or performance), but only if the second of the two actions was a performance reminder.  Id. at 49 of 51 (cm/ecf page).  Should the employee desire to remain with FedEx, he or she is required to enter into a written personal performance agreement that sets forth specific actions and timetables for the employee to correct the deficiency; it also commits the employee to abide by the agreement.  Id.

If an employee receives a combination of three deficiency notifications, including warning letters and performance reminders, within a 12-month period, the employee is typically terminated.  Acceptable Conduct Policy at 34-35 of 58 (cm/ecf pages); Performance Improvement Policy at 49-50 of 51 (cm/ecf pages).

Plaintiff, who first began working for FedEx in 1992 as a part-time courier before being promoted to management in 1993, received and was familiar with the above-discussed policies.  Def. Mot. at 2-3; Pl. Resp. at 5 (cm/ecf page).  At the time of his termination, Plaintiff was a dispatch manager, charged with "meeting FedEx's operational and administrative expectations,

3

which included supervising and motivating the FedEx dispatchers in Michigan and ensuring the administrative and managerial needs of those employees were met." Def. Mot. at 2; Pl. Resp. at 5 (cm/ecf page).

In 2010, Plaintiff began reporting to a new supervisor, Jamie Haboush, under whom he worked for three years. Def. Mot. at 4; Pl. Resp. at 5 (cm/ecf page). During that time, Haboush formally counseled Plaintiff regarding his need to improve leadership skills, including relationships, communication, and morale among his employees, and required Plaintiff to take specific steps to address deficiencies and improve his performance. Def. Mot. at 4; Pl. Resp. at 5 (cm/ecf page).

In March 2013, Plaintiff received a warning letter from Haboush for using inappropriate language with a subordinate employee. Def. Mot. at 5; Pl. Resp. at 5 (cm/ecf page). Several months later, in October 2013, Plaintiff was issued a performance reminder after failing to respond within 48 hours to a subordinate employee's emailed request for time off. Def. Mot. at 5; Pl. Resp. at 6 (cm/ecf page).[2] Plaintiff's failure to address the request apparently created a workplace conflict regarding scheduling, although the parties dispute the extent of the resultant disruption. Def. Mot. at 5; Pl. Resp. at 6 (cm/ecf page). Regardless, just a year prior, Plaintiff had been counseled by Haboush regarding Plaintiff's failure to timely address subordinate employees' concerns; at that time, Plaintiff also received instructions to respond to employee emails within 48 hours. Def. Mot. at 5; Pl. Resp. at 6 (cm/ecf page). Because this was Plaintiff's second deficiency notification within a 12-month period, Plaintiff was given a decision day, and

---

[2] Plaintiff maintains that the requesting employee had failed to follow the proper protocol for requesting the time off and did not follow up on the request as was office practice. Pl. Resp. at 6 (cm/ecf page). Plaintiff concedes, however, that he did not respond to the email. See Howley Dep., Ex. A to Pl. Resp., 125:23, at 33 of 64 (cm/ecf page) (Dkt. 25-3) (testifying he did not see the email); id. 127:15, at 33 of 64 (cm/ecf page) (testifying he missed the email); id. 137:25-138:1, at 36 of 64 (cm/ecf page) (testifying he did not ignore the email, he missed it).

thereafter he entered into a performance improvement agreement to demonstrate his commitment to improving his performance as a manager.  Def. Mot. at 6; Pl. Resp. at 7 (cm/ecf page).

Just a week after Plaintiff's decision day, two of Plaintiff's subordinate employees contacted Haboush, complaining that Plaintiff had refused to speak with an irate customer who had requested to talk to a manager.  Def. Mot. at 6.  Plaintiff does not appear to dispute that the employees contacted Haboush regarding the alleged incident, but he does disagree with the underlying facts that prompted the employees to contact Haboush.[3]  In any event, Haboush placed Plaintiff on paid suspension while he investigated the incident, including obtaining written statements from Plaintiff and witnesses.  Id. at 6-7; Pl. Resp. at 7 (cm/ecf page).

From FedEx's perspective, the results of the investigation evidenced a "leadership failure," warranting a third disciplinary letter.  Def. Mot. at 7.  FedEx asserts Plaintiff was then terminated in accordance with company policy.  Id.  Plaintiff was 54 years old.  Id. at 8; Pl. Resp. at 9 (cm/ecf page).  Plaintiff acknowledges that he received the third letter and was subsequently terminated, although he criticizes the thoroughness of Haboush's investigation, disagrees with the results of the investigation, and contends that age animus was the true reason behind his termination.  Pl. Resp. at 8-9 (cm/ecf pages).

Plaintiff challenged his last two deficiency notifications, as well as his subsequent termination, using FedEx's grievance procedure, and all three actions were upheld by upper management.  Def. Mot. at 7; Pl. Resp. at 9 (cm/ecf page).  Plaintiff then filed the instant action, based on diversity jurisdiction, alleging age discrimination under Michigan law.

---

[3] Plaintiff maintains that he was never asked to speak with a customer, but, rather, he directed the employee to refer the customer to the appropriate manager and was under the impression that the appropriate manager had taken the call; had he been asked to speak with the customer, Plaintiff asserts he would have done so.  Pl. Resp. at 7 (cm/ecf page).

### III.  STANDARD OF DECISION

Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009) (brackets omitted).

When a defendant moves for summary judgment, it "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004).  The nonmoving party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).  A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

6

## IV.  ANALYSIS

Plaintiff brings a single claim of age-related discrimination under Michigan's ELCRA. Under the Act, Plaintiff's age need not be the sole reason for the adverse action, but it must have been a "motivating factor"; that is, it must have "made a difference in the contested employment decision."   Hazle v. Ford Motor Co., 628 N.W.2d 515, 522 (Mich. 2001).   A claim for age discrimination can be made by way of direct or circumstantial evidence, the latter of which is typically analyzed using the familiar McDonnell Douglas burden-shifting framework.  See Town v. Mich. Bell Tel. Co., 568 N.W.2d 64, 67-68 (Mich. 1997); see also Tilley v. Kalamazoo Cnty. Road Comm'n, 777 F.3d 303, 307-308 (6th Cir. 2015) (sufficiency of circumstantial evidence for discrimination claim under ELCRA analyzed under McDonnell Douglas framework). "Under either the direct evidence test or the McDonnell Douglas test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." Sniecinski v. Blue Cross & Blue Shield of Mich., 666 N.W.2d 186, 193 (Mich. 2003).  Plaintiff attempts to forestall summary judgment by the "direct evidence" and the "circumstantial evidence" routes, but falls short as to each.

### A.  Direct Evidence

Direct evidence is evidence that "requires" the conclusion that discrimination was at least a motivating factor in the employment decision and "is sufficient to get the plaintiff's case to a jury." Downey v. Charlevoix Cnty. Bd. of Cnty. Road Comm'rs, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998); see also Kuhn v. Washtenaw Cnty., 709 F.3d 612, 624 (6th Cir. 2013) ("Direct evidence is proof that, if believed, compels 'the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" (quoting Jacklyn v. Schering-Plough

7

Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999))).[4]  Plaintiff points to the

following as constituting direct evidence of intentional discrimination:

- Plaintiff testified that Haboush "would make comments about older employees and how they should be retired, or ask why they were still working."  Howley Dep., Ex. A to Pl. Resp., 72:6-72:10, at 19 of 64 (cm/ecf page) (Dkt. 25-3); see also id. 73:10-73:15, at 20 of 64 (cm/ecf page) (same); id. 74:8-74:9, at 20 of 64 (cm/ecf page) (same); id. 74:21-74:25, at 20 of 64 (cm/ecf page) (same).

- Plaintiff characterized Haboush's comments as "[j]ust the fact that they were, you know, being old and not keeping up with technology, the fact that they were, you know, still around and should have retired."  Id. 73:19-73:25, at 20 of 64 (cm/ecf page).

- Haboush allegedly remarked to Plaintiff that Plaintiff "had been around awhile and [Haboush] was surprised to see how much money [Plaintiff] made at FedEx."  Id. 76:14-76:19, at 20 of 64 (cm/ecf page).

See Pl. Resp. at 13 (cm/ecf page) (submitting that these remarks demonstrate that Haboush had

previously exhibited animus toward older workers, including Plaintiff).[5]  However, none of these

---

[4] The Michigan Supreme Court has endorsed the Sixth Circuit's definition of "direct evidence" in ELCRA cases.  See Sniecinski, 666 N.W.2d at 192; Harrison v. Olde Fin. Corp., 572 N.W.2d 679, 681 (Mich. Ct. App. 1997) ("In analyzing discrimination claims arising under the Michigan Civil Rights Act, Michigan courts have often resorted to federal precedent for guidance."); Pavicic v. Quaker Oats Co., No. 96-CV-74578-DT, 1997 WL 34735580, at *2 (E.D. Mich. Dec. 15, 1997) ("Whether an employment discrimination claim is brought under Elliot[t]–Larsen or federal law, the same evidentiary burdens apply.").

[5] In Plaintiff's initial response to FedEx's motion, it was unclear to the Court whether Plaintiff was attempting to make a case by way of direct evidence.  Plaintiff argued that he could make out a prima facie case of discrimination by showing he was a member of a protected class who had suffered an adverse action, and the individual responsible for the adverse action was predisposed to discriminate against the alleged trait and acted on that predisposition.  Pl. Resp. at 12 (cm/ecf page).  Importantly however, Plaintiff's response failed entirely to address FedEx's opening argument that these same statements on which Plaintiff relied fell short of being direct evidence of intentional discrimination.  See Def. Mot. at 10-12.  Nor did Plaintiff's response offer any additional explanation as to the standard for direct evidence or why the proffered statements meet that standard.  Indeed, it was not until Plaintiff, in a single sentence, cursorily referred back to these alleged age-related statements in his supplemental brief that the Court understood Plaintiff to be arguing that direct evidence supported his claim.  See Pl. Suppl. Br. at 5 (Dkt. 32) ("One of the key decision makers in the adverse actions had previously made to

alleged remarks by Haboush compels the conclusion that Plaintiff's termination was, at least in part, the product of age animus.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences."  Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004). The evidence offered by Plaintiff requires at least one inference, if not more, to reach the conclusion that any of the disciplinary actions, or the eventual termination, was motivated by age animus.  For instance, even assuming some of the remarks demonstrate a predisposition toward age bias (e.g., the employees should be retired), there is no evidence that Haboush acted on that predisposition; thus, the Court would be required to draw an inference to reach the animus conclusion.  See Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006) (recommendation to use a certain list in promotion to advance black candidates not direct evidence because court would have to infer the decision maker agreed with and acted on the reasoning underlying the recommendation); Rowan, 360 F.3d at 548 (statements by management concerning the need to lower the average age of the workforce, even if made, not direct evidence in absence of facts tying the decision to select plaintiffs for termination on the basis of that trait).

Similarly, Haboush's alleged statements to Plaintiff concerning his tenure and salary at FedEx are far too ambiguous — and as such, require multiple inferences to reach Plaintiff's desired conclusion — to qualify as direct evidence.  As an initial matter, the statements do not even directly reference Plaintiff's age, requiring the Court to infer first, that Haboush was, in

---

Plaintiff age-related statements that are direct evidence of age discrimination.").  Plaintiff's failure to submit any developed argumentation on this issue beyond his summary assertions that the statements are directly probative of intentional discrimination renders this argument waived. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Nonetheless, the Court proceeds to address the argument and rejects it on the merits.

fact, remarking on Plaintiff's advanced age, and, second, that the statements reflected a bias against Plaintiff's age.  See Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 708 (6th Cir. 2008) ("[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." (collecting cases)).  Plaintiff's subjective interpretation of the comments is insufficient to establish direct evidence of intentional discrimination.  Hein v. All Am. Plywood Co., Inc., 232 F.3d 482, 488 (6th Cir. 2000) (direct evidence cannot be based on subjective beliefs).

Moreover, in context, when Haboush made the statements about tenure and salary, he appeared to be exploring options for Plaintiff to maintain some level of employment with FedEx, but was unsure of the feasibility of those options given Plaintiff's then-existing seniority and salary.  Indeed, Plaintiff himself understood Haboush to be "looking at potential options for [Plaintiff] to step down as manager at FedEx into other perhaps hourly positions."  Howley Dep. 77:21-78:11, 78:20-79:2, at 21 of 64 (cm/ecf page).  Specifically, Haboush discussed creating a drop box handler position for Plaintiff but thought Plaintiff would not be interested, because the position would require a pay cut of over fifty-percent.  Id. 78:12-78:17, 148:23-149:18, at 21, 38-39 of 64 (cm/ecf pages).  Because this conversation is at least equally susceptible to the above interpretation as opposed to a veiled reference to Plaintiff's age, it is not direct evidence of intentional age discrimination.  See Bergman v. Baptist Healthcare Sys., Inc., 167 F. App'x 441, 445-446 (6th Cir. 2006) (statement that pregnant employee was a risk the employer could not tolerate, even with timing of termination, was ambiguous because it could have referred to the risk to children in the employer's care posed by having a teacher who was unable to lift);

Norbuta v. Loctite Corp., 1 F. App'x 305, 313-314 (6th Cir. 2001) (statements that admit to more than one plausible interpretation not direct evidence).

For the same reasons, general questions about retirement directed toward various employees do not compel a conclusion that the discipline and/or termination imposed upon our particular Plaintiff was influenced by his age.  See Neff v. Petoskey Pub. Sch., No. 236287, 2003 WL 1698215, at *1 (Mich. Ct. App. Mar. 27, 2003) (per curiam) ("Merely asking a candidate's age or retirement plans, without more, does not compel the conclusion that age discrimination occurred," particularly when candidate brought up retirement in interview); Stedman v. Cox, Hodgman & Giarmarco, P.C., No. 216008, 2002 WL 234874, at *2 (Mich. Ct. App. Feb. 15, 2002) ("Questions about an employee's retirement plans are not enough to raise an inference of age discrimination." (citing Woytral v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997))) (per curiam).

Equally important, none of the offered statements is linked to adverse action in any way, let alone, adverse action taken against Plaintiff.  See Suits v. The Heil Co., 192 F. App'x 399, 403-404 (6th Cir. 2006) (discriminatory remarks not linked to adverse employment action do not constitute direct evidence); compare Sobieski v. Takata Seat Belts, Inc., No. 268366, 2006 WL 2270382, at *3 (Mich. Ct. App. Aug. 8, 2006) (statements not direct evidence when plaintiff failed to connect them to the decision to discipline or terminate him), with DeBrow v. Century 21 Great Lakes, Inc., 620 N.W.2d 836, 839 (Mich. 2001) (superior's statement that employee was "too old for this shit," during conversation in which employee was demoted was direct evidence of discriminatory intent) and Downey, 576 N.W.2d at 718 (multiple alleged statements reflecting an intent to "get rid of the older guys" coupled with testimony that older employees

were picked on and younger employees were given preferential treatment constituted direct evidence).

For instance, despite Haboush's statement that older employees had trouble keeping up with technology, there is nothing to suggest that a lack of technical know-how prompted Plaintiff's discipline and/or termination or that of any other older employee. And while Haboush's comments regarding Plaintiff's term of service with FedEx were made in connection with Plaintiff's performance reminder and decision day, Howley Dep. 76:16-77:1, 77:17-77:20, at 20-21 of 64 (cm/ecf pages), the Court has already rejected the notion that such comments were clearly discriminatory so as to constitute direct evidence.

Regarding the remaining and more general, age-related and retirement comments, Plaintiff does not identify when they were made or suggest that they were contemporaneous with any of the disciplinary actions or Plaintiff's ultimate termination. See Oliver v. Federated Mut. Ins. Co., 341 F. App'x 108, 109-110 (6th Cir. 2009) (statement referencing age not direct evidence when it "was not part of the decisional process and was unconnected in time and context to [the] termination"); Rowan, 360 F.3d at 550 ("[S]tatements . . . by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." (quoting Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir. 1998)) (brackets in original)).

The inferences necessary to bridge the gap from Plaintiff's testimony to intentional age discrimination, and the absence of a nexus between the alleged statements and the adverse employment action at issue here dictate that Plaintiff must proceed under the McDonnell Douglas burden-shifting framework.

12

### B.  Circumstantial Evidence Under <u>McDonnell Douglas</u>

Under the <u>McDonnell Douglas</u> scheme, Plaintiff must first establish a <u>prima facie</u> case of age discrimination, which would then entitle him to a presumption of discrimination and shift the burden to FedEx to offer legitimate, non-discriminatory reasons for the adverse actions.  <u>Town</u>, 568 N.W.2d at 67-68.  If FedEx is able to do so, the presumption disappears and the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that FedEx's offered reasons are pretextual — that is, that Plaintiff was the victim of intentional discrimination.  <u>Id.</u> at 68-69.

Here, Plaintiff cannot clear the first hurdle, for he has not presented sufficient evidence, as required by the <u>prima facie</u> standard, of other employees, similarly-situated to Plaintiff but younger, who were treated more favorably.  Nonetheless, even if Plaintiff could establish a <u>prima facie</u> case, FedEx has provided legitimate and non-discriminatory reasons for its actions, and no reasonable fact-finder could conclude that the given reasons were pretext for age discrimination.

### 1.  <u>Prima Facie</u> Case

To establish a <u>prima facie</u> case, Plaintiff must demonstrate that: (i) he is a member of a protected class; (ii) he was subjected to an adverse employment action; (iii) he was qualified for the position; and (iv) he was treated differently than others, similarly situated but outside the protected class.  <u>Town</u>, 568 N.W.2d at 68.[6]  For purposes of summary judgment, FedEx concedes that Plaintiff meets the first three prongs of the analysis, focusing instead on his

---

[6] Alternatively, a plaintiff can satisfy this fourth element by demonstrating that he was replaced by someone outside of the protected class, <u>see</u> <u>Tilley</u>, 777 F.3d at 308; however, it is undisputed that Plaintiff's replacement, James Person, is three years older than Plaintiff.  Howley Dep. 201:14-201:17, at 52 of 64 (cm/ecf page) (testifying Person took over Plaintiff's responsibilities following Plaintiff's termination); <u>id.</u> 93:14-93:16, at 25 of 64 (cm/ecf page) (testifying he was born in 1959); Haboush Decl., Ex. I to Def. Mot., at 6 of 29 (cm/ecf page) (Dkt. 23-10) (Person born in 1956).

inability to offer evidence of younger employees who engaged in similar behavior but were treated more favorably.  Def. Mot. at 13, 14-15.

A threshold issue is what it means to be "similarly situated."  The parties appear to agree that the proposed comparators must be similarly situated in all <u>relevant</u> aspects of the employment.  Def. Mot. at 14; Pl. Resp. at 12 (cm/ecf page).  However, FedEx relies on <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 583 (6th Cir. 1992), to assert that any proposed comparators "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Def. Mot. at 14-15.  Plaintiff rejects too rigid of an application of these factors, arguing the <u>prima facie</u> standard is not an onerous one.  Pl. Resp. at 12 (cm/ecf page).[7]

The Sixth Circuit has cautioned courts about mechanical application of the <u>Mitchell</u> factors, explaining that those factors were relevant to the particular circumstances of that case — an alleged discriminatory disciplinary action that led to termination.  <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998).  Rather, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  <u>Id.</u>  However, like <u>Mitchell</u>, the instant matter concerns disciplinary actions that led to termination, making the <u>Mitchell</u> factors relevant to the present case.

The thrust of Plaintiff's <u>prima facie</u> case is that no other employee has been disciplined for the conduct that allegedly prompted the three deficiency notices leading up to his own termination.  The three disciplinary actions at issue are: (i) Plaintiff's warning letter for using

---

[7] Notably, however, Plaintiff does not reject specific factors recited by the <u>Mitchell</u> court, nor does he offer any alternative factors that he thinks the Court should consider.

inappropriate language with a subordinate employee; (ii) Plaintiff's performance reminder for failing to respond within 48 hours to an employee's request for time off; and (iii) Plaintiff's warning letter resulting from the alleged failure to take a call from a customer who requested to speak with a manager. The Court reviews each in turn.

### i. Inappropriate language with a subordinate employee

According to FedEx, the conduct prompting Plaintiff's first warning letter was the use of the phrase "you're pissing me off" during a conversation between Plaintiff and a subordinate employee regarding a scheduling issue. Haboush Dep., Ex. C to Pl. Suppl. Br., 7:7-8:13, at 3 of 14 (cm/ecf page) (Dkt. 32-2). The employee subsequently complained about Plaintiff's handling of the situation to Haboush, and directing that type of language at an employee was deemed inappropriate or unprofessional. Id. 7:21-8:17, at 3 of 14 (cm/ecf page); see also 3/14/2013 Warning Letter, Ex. 3 to Haboush Decl. (Ex. I to Def. Mot.), at 12 of 29 (cm/ecf page) (Dkt. 23-10) (warning letter for using inappropriate language with a subordinate, conduct in violation of the Acceptable Conduct Policy P2-5). Plaintiff's version of the conversation differs slightly: he stated that he "was just pissed off that [he has] employees that aren't adult enough to be able to work together." See Howley Dep. 107:6-108:5, at 28 of 64 (cm/ecf page).

In support of his contention that he was unfairly singled out for the use of this phrase, Plaintiff relies on Haboush's testimony that Haboush has used vulgar language in the workplace, but has never been disciplined. Pl. Suppl. Br. at 2 (Dkt. 32). Haboush admitted to using similar phrasing ("pissed off" or "pissing me off"), but denied directing that phrase at another individual; rather, it was used in connection with a circumstance or a situation. Haboush Dep. 8:18-9:13, at 3-4 of 14 (cm/ecf pages) ("I would say if something is not going right with a computer, or whatever, this thing's ticking me off, or whatever, I would say that."). Haboush

further testified that he has used stronger language, such as common swear words, on the job or in meetings.  Id. 11:9-13:2, at 4-5 of 14 (cm/ecf pages).  In addition, Suzanne Cattin, a FedEx dispatcher under Plaintiff's supervision, testified that she heard Haboush use swear words and phrases such as "pissed off" many times, including to her.  Cattin Dep., Ex. F to Pl. Suppl. Br., 17:1-17:24, at 7 of 8 (cm/ecf page) (Dkt. 32-5).  James Person, a dispatch manager for FedEx and former peer of Plaintiff's, also testified that Haboush occasionally used profanity.  Person Dep., Ex. H to Pl. Suppl. Br., 21:24-22:8, at 8 of 9 (cm/ecf page) (Dkt. 32-7).

These instances may fall along the lines of inappropriate language with a subordinate, and the Court infers from Haboush's testimony that he was never disciplined for such language. See Haboush Dep. 14:24-15:12, at 5 of 14 (cm/ecf page) (testifying that he was unaware of or could not recall whether anyone was disciplined for profanity or other harsh language).  Thus, Haboush may be similarly situated to Plaintiff in terms of being subjected to the same standards (i.e., professionalism in dealing with subordinate employees), while engaging in similar conduct (i.e., the use of inappropriate language).

Still, the Court is not convinced that Haboush and Plaintiff are similarly situated in all relevant respects with regard to these alleged instances.  Specifically, there is no evidence that any subordinate employee complained to Haboush's supervisor regarding Haboush's conduct and/or language.  In fact, witnesses testified that they did not complain about Haboush's language to his supervisor, nor were they aware of anyone else who may have complained or reported the conduct.  Cattin Dep. 17:25-18:11, at 7 of 8 (cm/ecf page) (did not complain about or report Haboush's language); Person Dep. 17:25-18:10, at 7 of 9 (cm/ecf page) (have not reported or complained about use of inappropriate language during meetings); Howley Dep. 71:10-71:21, 109:5-109:24, at 19-20, 29 of 64 (cm/ecf pages) (did not complain, nor aware of

others who complained, about Haboush's profanity).   However, in Plaintiff's case, the subordinate employee sent Haboush, Plaintiff's supervisor, an email complaining about the manner in which Plaintiff spoke to her and how Plaintiff handled the overall situation.   Haboush Decl., Ex. I to Def. Mot., at 3 of 29 (cm/ecf page) (Dkt. 23-10); Haboush Dep. 7:21-8:7, at 3 of 14 (cm/ecf page).

Whether a complaint was reported is critical to the similarly situated analysis, because, absent a complaint, the pertinent supervisory authority will not be aware of conduct warranting investigation and/or discipline.   Putting aside that Plaintiff and Haboush reported to different supervisors, Haboush's supervisor could not be expected to respond in a similar fashion when one supervisor — here, Haboush's — lacked the necessary knowledge that could have triggered a response.   Accordingly, the absence of a complaining subordinate is a factor that distinguishes the treatment of Plaintiff's conduct from the lack of a response to Haboush's alleged conduct.   One can only speculate as to the outcome had Cattin, or anyone else, contacted Haboush's supervisor regarding his language and/or professional decorum.   That is insufficient to forestall summary judgment.   See Nelski v. Trans Union, LLC, 86 F. App'x 840, 846 (6th Cir. 2004) ("Unsubstantiated speculation is not enough to create a genuine issue of material fact on which a jury could reasonably find for [the plaintiff].").[8]

The remainder of support for Plaintiff's claim that he was singled out, on the basis of age discrimination, for the alleged language consists of: (i) a single statement that "[o]ther employees

---

[8] The Court also observes that it is not immediately obvious that Haboush is "outside the protected class."   If he is not, then Haboush is not an appropriate comparator.   Haboush is just six years younger than Plaintiff.   Def. Mot. at 12 n.2.   Neither party has briefed what it means to be outside the protected class in the context of age.   However, in age-discrimination cases that rely on an older employee's replacement by a younger employee, the Sixth Circuit has held, "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant."   Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003).

and managers admitted to using and hearing inappropriate language at work, but were not themselves disciplined and were unaware of anyone else being disciplined"; and (ii) Haboush's testimony that he has never disciplined anyone else for such language. Pl. Suppl. Br. at 2-3. But these points lack merit.

Plaintiff does not offer any analysis as to why any of the alleged (unnamed) offenders or instances of misconduct were similarly situated either to him or to his own conduct. It is true that the witnesses consistently testified that they have either used or overheard language at FedEx akin to or worse than that used by Plaintiff.[9] However, most of the testimony does not provide any additional detail beyond that general admission or awareness.[10] Such generalized

---

[9] E.g., Stern Dep., Ex. D to Pl. Suppl. Br., at 5-6 of 7 (cm/ecf pages) (Dkt. 32-3); Cattin Dep. at 5-7 of 8 (cm/ecf pages) (testifying that she has heard and used swear words or "less than politically correct" language, including language such as "I'm pissed off about something"); Thomas Dep., Ex. G to Pl. Suppl. Br., at 5-6, 9-10, of 21 (cm/ecf pages) (Dkt. 32-6) (testifying about inappropriate language used in the workplace); Person Dep. at 5, 7-8 of 9 (cm/ecf pages) (testifying about inappropriate language in the workplace).

[10] For example, the following exchange is emblematic of much of the deposition testimony:

> Q. Have you ever heard them use language that's less than always absolutely politically correct all the time, less than politically correct?
> A. Do you mean do they -- do they do that all the time or have I heard them on occasion?
> Q. Have you heard on occasion people --
> A. Yes, I have.
> Q. Like people maybe get mad enough to use a swear word?
> A. Oh, yes.
> . . .
> Q. Have you ever heard them use a phrase such as I'm pissed off about something?
> A. Yes.
> . . .
> Q. Have you ever -- and again, this will be a general question. I'm not even going to ask for particulars, but have you ever used a swear word on the job because you were not happy?
> A. My name is not St. Suzanne, so, yes I have.
> Q. Have you heard your managers use swear words?

references are insufficient to survive summary judgment.[11]

Notably, these general references to the use of profanity fail to communicate sufficient information that would permit the Court to infer, first, that the speakers were younger than Plaintiff and, second, that they were similarly situated to Plaintiff in all relevant respects.  As to the former, even when specific speakers were identified, there was no accompanying information as to their ages.  See Thomas Dep., Ex. G to Pl. Suppl. Br., 29:24-32:21, at 10 of 21 (cm/ecf page) (Dkt. 32-6) (identifying specific individuals who used profane and offensive language).  Regarding the latter, the Court would have to assume, at least, that others reported or complained about the offending language such that the disciplining authority was aware of it, and that the misconduct was comparable to that of Plaintiff's, i.e., inappropriate language directed toward a subordinate employee.  However, what little the record does reveal suggests that the offending individuals would not be similarly situated to Plaintiff.  For instance, there is some indication that at least some of the identified offenders were employees under Plaintiff's direct supervision.[12]  But it would turn the similarly situated analysis on its head to compare the action

---

A.  Probably.  Again, we're -- yeah.  They're human.

Cattin Dep. at 5-6 of 8 (cm/ecf pages).

[11] Indeed, Plaintiff's lack of legal and factual analysis with respect to this first disciplinary action, as well as the other two disciplinary actions, see notes 15-16 infra, waives his arguments regarding any alleged disparate treatment in response to FedEx's motion entirely.  See McPherson, 125 F.3d at 995-996; Crocker v. Comm'r of Soc. Sec., No. 1:08-CV-1091, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.").

[12] Jo Thomas, a FedEx dispatcher who reported to Plaintiff, specifically identified certain individuals who used vulgar language in the workplace, and while it is unclear to whom all of those individuals reported there is some evidence that the speakers were under Plaintiff's employ.  See Thomas Dep. 29:24-32:21, at 10 of 21 (cm/ecf page).  For instance, Thomas identified Cattin as one such employee, id. 30:7-30:19, at 10 of 21 (cm/ecf page), and Cattin did report directly to Plaintiff.  Thomas also discussed the offensive language in context of "other issues with Mr. Howley that [she] complained about," i.e., the presence of offensive language

taken against Plaintiff with action (or lack thereof) taken against other employees when Plaintiff was the authority responsible for determining what, if any, action was to be taken.  Moreover, to the extent that Plaintiff was in a supervisory capacity as a manager, his subordinate employees may not have been subject to the same standards.  Thus, from these general references, the Court is unable to perceive a suitable comparator.[13]

Additionally, a general lack of knowledge regarding discipline in response to inappropriate language in the workplace does not necessarily mean that other employees were not formally disciplined, or informally spoken to or reprimanded, especially considering that the witnesses testified that they would not be privy to such information.  See Stern Dep., Ex. D to Pl. Suppl. Br., 16:12-16:20, at 6 of 7 (cm/ecf page) (Dkt. 32-3); Cattin Dep. 20:4-20:17, at 7 of 8 (cm/ecf page); Thomas Dep. 57:13-57:22, at 17 of 21 (cm/ecf page); Haboush Dep. 29:19-29:24,

---

and profanity in "the room."  Id. 28:2-28:25, at 9 of 21 (cm/ecf page).  There is also some indication that she complained to Plaintiff about such language, which further suggests that the identified speakers were under Plaintiff's direct supervision.  Id. 33:4-33:11, at 11 of 21 (cm/ecf page).

[13] Although not directly referenced, let alone discussed in any detail, in Plaintiff's supplemental brief, Thomas's deposition testimony describes with some specificity FedEx employees who regularly utilized profane and offensive language, and there is evidence that Thomas reported the same internally to FedEx.  See Thomas Dep. 28:12-31:19, at 9-10 of 21 (cm/ecf pages) (describing witnessing specific instances of profanity as well as offensive and racist conduct).  It appears that Thomas may have even complained to Plaintiff directly about the employees' language or behavior.  Id. 33:4-33:11, at 11 of 21 (cm/ecf page).  However, she also reported at least some of this conduct (which specific conduct is unclear) in a complaint to either Human Resources or to FedEx corporate headquarters, id. 28:2-28:17, 29:1-29:3, at 9-10 of 21 (cm/ecf pages), and she may have also filed a complaint with the Equal Employment Opportunity Commission, id. 33:12-33:14, at 11 of 21 (cm/ecf page).  Thomas knew that none of the offenders had been terminated following her written complaint; however, she did not know whether the offenders received any other form of disciplinary action.  Id. 32:7-32:12, at 10 of 21 (cm/ecf page).  Given the lack of information regarding the age of the offenders and the manner in which FedEx handled the complaint, it would be speculative to draw any conclusions as to whether these employees fell outside the protected class or whether they were ever subject to formal discipline.  And as it appears that the offenders may have been under Plaintiff's direct supervision, to the extent Plaintiff was a decision maker with regard to any disciplinary action, the offenders would not be similarly situated to Plaintiff in at least one important respect.

at 9 of 14 (cm/ecf page).  Accordingly, the testimony does not provide a basis to conclude that the alleged speakers were treated more favorably than Plaintiff.

Haboush's testimony that he has never disciplined anyone other than Plaintiff for using the phrase "pissed off" proves nothing, although he probably had heard such language at some point during his 16 years with FedEx.  See Haboush Dep. 10:19-11:3, at 4 of 14 (cm/ecf page). There is no evidence that Haboush was presented with a situation analogous to that of Plaintiff's and then declined to take disciplinary action against that employee.[14]  To assume either of the points necessary to sustain Plaintiff's argument would be pure speculation.  See Nelski, 86 F. App'x at 846.

### ii. Failure to respond to an employee's email within 48 hours

Plaintiff, again, relies primarily on testimony from others that they were unaware of any other employee being disciplined for a failure to respond within 48 hours to an email.  See Pl. Suppl. Br. at 3.[15]  However, for the reasons described above, this testimony fails to pass muster. It cannot be assumed that, because the deposed witnesses were not aware of such instances, such instances never occurred.  Plaintiff's argument is conclusory and speculative, and it fails to address any of the pertinent points of the similarly situated analysis.

---

[14] FedEx anticipated that Plaintiff would point to certain younger co-workers (Paul Rose, Tim Cecil, and Keith Anderson) who Plaintiff alleges used inappropriate language during work meetings but were not, to Plaintiff's knowledge, disciplined for it.  Def. Mot. at 15-16. However, Plaintiff does not bring these specific instances to the Court's attention.  In any event, and as FedEx points out, there is no evidence that these individuals directed the language toward a subordinate employee, nor is there evidence that an employee (subordinate or otherwise) complained about the language to a supervisory figure.  See Howley Dep. 108:14-112:11, at 28-29 of 64 (cm/ecf pages).

[15] Plaintiff's argument consists of the following statements: "Mr. Haboush was unaware of any other employee or manager who was ever disciplined for not returning an employee's email. Other employees and managers agreed."  Pl. Suppl. Br. at 3 (record citations omitted).

Plaintiff also makes a cursory reference to Haboush's purported admission that he routinely and intentionally ignores employee emails.  See Pl. Resp. at 13 (cm/ecf page).  Even assuming this is true, Plaintiff has provided no evidence of specific instances in which this occurred, the circumstances — including any resultant consequences — surrounding Haboush's failure to address an email, or whether Haboush was ever counseled or otherwise disciplined for the alleged failures.  See id.  Plaintiff also fails to offer any analysis or explanation as to why this purported admission renders Haboush an appropriate comparator under the similarly situated framework.  See id.  Notably, Plaintiff does not return to this point in his supplemental brief, filed after he deposed Haboush.  See Pl. Suppl. Br. at 3.  Accordingly, this unsubstantiated assertion can provide no support for Plaintiff.

### iii.  Failure to take a customer call when the customer requested to speak with a manager

Plaintiff continues his strategy of relying solely on deposition testimony from witnesses evincing an unawareness of other employees being disciplined for allegedly similar conduct — in this instance, failure to take a phone call.  Pl. Suppl. Br. at 3.[16]  As discussed twice now, this is unpersuasive, and the Court sees no reason to further belabor the point.

Having concluded that Plaintiff cannot establish a prima facie case with respect to each of the three adverse actions leading up to his termination, summary judgment is warranted on that basis alone.

### 2.  Pretext

However, even if Plaintiff could make out a prima facie case of age discrimination, FedEx has offered legitimate and non-discriminatory reasons for the adverse actions taken

---

[16] Again, Plaintiff's argument is limited to the following: "Mr. Haboush was unaware of 'anyone other than Mr. Howley being disciplined for not taking a phone call.'  Other employees and managers agreed."  Pl. Suppl. Br. at 3 (record citations omitted).

against Plaintiff, and no reasonable fact-finder could conclude that the given reasons are pretext for age discrimination.

In defense of its actions, FedEx asserts that Plaintiff exhibited poor managerial skills, experienced leadership failures, and ultimately failed to improve his performance and conduct. Def. Mot. at 17-18.  These are appropriate, nondiscriminatory explanations.  See Brown v. Ohio State Univ., 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) ("Reasons such as lack of leadership and management skills, the failure to accept problems within her responsibility, untimely completion of assignments, and poor communication are legitimate non-discriminatory reasons for an employee's demotion or termination."), aff'd, 385 F. App'x 486 (6th Cir. 2010).  Accordingly, the burden of production shifts back to Plaintiff to show that the given reasons are pretext for intentional age discrimination.

Pretext can be proven by demonstrating that: (i) the offered justifications had no basis in fact; (ii) the proffered reasons did not actually motivate the decisions; or (iii) the reasons were insufficient to motivate the actions.  E.g., Succarde v. Fed. Express Corp., 106 F. App'x 335, 339-340 (6th Cir. 2004).

To the extent Plaintiff relies on his conclusory allegations that younger employees engaged in similar conduct but were not similarly treated as evidence of pretext, his argument is not persuasive.  See Pl. Resp. at 14-15 (cm/ecf pages); Pl. Suppl. Br. at 4.  As discussed in detail above, Plaintiff has not presented sufficient information for the Court to conclude that there were other younger individuals who engaged in comparable misconduct but were not disciplined. Plaintiff's remaining arguments in support of pretext are also without merit.

First, Plaintiff asserts, summarily, that Haboush's investigation into the customer-call incident was a token one, because the complaining witnesses "were given time to corroborate

their stories" in advance of submitting witness statements and those same two employees apparently celebrated when Plaintiff was terminated.  Pl. Resp. at 8, 15 (cm/ecf pages).  Plaintiff also suggests that Haboush failed to interview a key witness — the manager to whom he instructed the complaining employee refer the customer.  Id. at 8 (cm/ecf page).  However, even if employees under Plaintiff's supervision "had it out" for Plaintiff, as he contends, that does not evidence discriminatory motive on the part of Haboush or FedEx.  As FedEx observes, when an employer takes adverse action against an employee based on an honestly held belief that stems from reasonable reliance on particularized facts, the employer may still be entitled to summary judgment even if its conclusion is later found to be mistaken.  Loyd v. Saint Joseph Mercy Oakland, 766 F.3d 580, 590-591 (6th Cir. 2014) (applying "honest-belief" rule in the context of an age-discrimination case).  Importantly, "[a]n employer's pre-termination investigation need not be perfect in order to pass muster under the rule," so long as the employer "'made a reasonably informed and considered decision before taking an adverse employment action.'"  Id. at 591 (quoting Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012)).

Here, it appears that FedEx interviewed several employees who were in the dispatch room when the incident occurred.  Thomas Dep. 44:17-45:23, at 13-14 of 21 (cm/ecf pages).  It is unclear what Plaintiff means when he states the witnesses "were given time to corroborate their stories" (Plaintiff provides no record citation for this assertion), but the witnesses were interviewed on an individual basis, and the Court perceives nothing nefarious about the investigative process.  Plaintiff does not assert that he was not given sufficient opportunity to be heard.  There is also nothing suspicious about the failure to interview a manager from a different department at a different location who failed to pick up the transferred call.  Haboush testified that he followed up with the supervisor of that particular manager and was told it was being

24

handled; accordingly, Haboush looked internally to his department to determine why the incident was not properly handled there. Haboush Dep. 25:4-25:14, 28:4-29:13, at 8-9 of 14 (cm/ecf pages). This decision, and the investigative procedure as a whole, seems reasonable. As such, even if FedEx was ultimately mistaken about what happened on the dispatch floor during the call in question, that error does not render its explanation for the adverse action pretextual.

Second, Plaintiff contends that Haboush misled other employees about the circumstances behind Plaintiff's departure. Pl. Resp. at 15 (cm/ecf page); Pl. Suppl. Br. at 4. Even assuming that is true, it is not evidence of pretext. Haboush could just as easily, and perhaps even more plausibly, have been attempting to allow Plaintiff to "save face."

Third, Plaintiff asserts that the failure of Richard Stern, a securities specialist with FedEx, to become involved in the investigation underlying the first warning letter — Plaintiff's inappropriate language with a subordinate — is evidence of pretext. Pl. Suppl. Br. at 4. However, Stern testified that he would not participate in an investigation concerning inappropriate language between a manager and an employee, and that he normally becomes involved only when the incident concerns threatening or offensive language. Stern Dep. 15:22-16:15, at 6 of 7 (cm/ecf page). The record is rather sparse on this first incident, but there is no suggestion that the complaining employee felt threatened or offended, insofar as she was upset with the unprofessional manner in which Plaintiff handled the situation and/or addressed her. See Haboush Dep. 7:21-8:13, at 3 of 14 (cm/ecf page).

Plaintiff fails to offer sufficient evidence that FedEx's non-discriminatory reasons were merely pretext for age animus. The only evidence brought to the Court's attention that remotely links Haboush with age animus is Plaintiff's testimony regarding the somewhat ageist comments allegedly made by Haboush. However, Plaintiff cannot reach the jury on the basis of arguably

biased comments absent some showing that the comments were causally related to some adverse action.  E.g., Sniecinski v. Blue Cross & Blue Shield of Mich., 666 N.W.2d 186, 193 (Mich. 2003) ("Under either the direct evidence test or the McDonnell Douglas test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision."); Blizzard v. Marion Technical Coll., 698 F.3d 275, 287 (6th Cir. 2012) (ambiguously discriminatory remarks that were unrelated to the adverse termination decision insufficient to establish pretext); Suits v. The Heil Co., 192 F. App'x 399, 407 (6th Cir. 2006) (affirming a district court's conclusion that stereotypical comments offered for direct evidence may be understood as pretext, but were insufficient without more for a reasonable jury to conclude the defendant's legitimate justification was pretext, particularly as they were unconnected to the decision-making process); Hein v. All Am. Plywood Co., Inc., 232 F.3d 482, 490 (6th Cir. 2000) (subjective interpretation that employer's action was a comment on plaintiff's age insufficient to establish pretext).

Indeed, the fact that Person, a dispatch manager three years older than Plaintiff, took over Plaintiff's position following Plaintiff's termination, Person Dep. 24:5-26:12, at 8-9 of 9 (cm/ecf pages), belies the conclusion that Haboush and/or FedEx was motivated by age animus in disciplining and terminating Plaintiff.  Cf. Lefevers v. GAF Fiberglass Corp., 667 F.3d 721, 726 (6th Cir. 2012) (in reduction in force cases, when retained employees are near, or older than, plaintiff's age, there is no inference of age discrimination).

The record is also replete with workplace incidents and problems that FedEx (and Plaintiff's subordinates) attributed to Plaintiff's poor managerial style.  While Plaintiff downplays many of these incidents, some of them appear quite serious.  For instance, the workplace disruption that resulted from Plaintiff's failure to timely respond to an employee's

request for leave — the event underlying the performance reminder — appeared to be quite significant by Plaintiff's own account.   The requesting employee suffered a heart attack following confrontations with Plaintiff and her fellow co-workers, which she and her doctors attributed to stress.  See 10/10/2013 Emails, Ex. E to Def. Mot. (Ex. 40 to Howley Dep.), at 37-41 of 51 (cm/ecf pages) (Dkt. 23-6); see also Robert Dep., Ex. E to Pl. Suppl. Br., 21:1-26:19, at 8-9 of 12 (cm/ecf pages) (Dkt. 32-4).   Another employee under Plaintiff testified that she had multiple concerns about Plaintiff's managerial style, which she ultimately raised with Human Resources and FedEx corporate headquarters.  See Thomas Dep. 15:7-21:20, 25:20-28:15, at 6-8, 9 of 21 (cm/ecf pages).

And these were not the only problems raised about Plaintiff's leadership or capacity as a manager.  See also Roberts Dep. 15:5-16:25, 19:9-20:22, 29:13-30:8, at 6, 7, 10 of 12 (cm/ecf pages) (subordinate employee testifying to issues with Plaintiff's managerial style); 10/24/2013 Statement of Complaints, Ex. 6 to Haboush Decl. (Ex. I to Def. Mot), at 19 of 29 (cm/ecf page) (Dkt. 23-10) (courier's complaint regarding Plaintiff's failure to address a workplace conflict); 11/1/2013 Memorandum, Ex. 7 to Haboush Decl. (Ex. I to Def. Mot.), at 20-23 of 29 (cm/ecf pages) (Dkt. 23-10) (memorandum summarizing concerns and morale problems raised by dispatchers in Plaintiff's work group).   Several of these raised issues appear to be distinct from the three incidents underlying the disciplinary actions.

Plaintiff may argue that it was harsh or unfair to be written up for certain alleged conduct (i.e., for saying "pissed off" to a subordinate employee), but Plaintiff admits that he had been counseled specifically on "his need to work on his leadership skills, to improve his relationships and communications with his employees, and to improve the morale in his workgroup."  Def. Mot. at 4 (citing Plaintiff's deposition testimony and exhibits in support); Pl. Resp. at 5 (cm/ecf

page) (admitting same).  These are the very attributes that appear to have prompted the three incidents underlying the warning letters and performance reminder.

Even if the disciplinary decisions were perceived as somewhat harsh, that does not provide a legal basis for concluding that the same actions were motivated by age animus, at least in absence of something more.  "[P]laintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age . . . discrimination." Lytle v. Malady, 579 N.W.2d 906, 916 (Mich. 1998); see also Lefevers, 667 F.3d at 725-726 (disagreement with employer's assessment of employee performance does not render employer's explanation pretextual).

Because Plaintiff has failed to adduce evidence for a reasonable fact-finder to conclude that it was age animus and not Plaintiff's poor managerial skills that drove each of the adverse actions, and ultimately his termination, summary judgment is warranted on that basis, as well.

## V.  CONCLUSION

For the forgoing reasons, FedEx's motion for summary judgment (Dkt. 23) is granted.

SO ORDERED.


Dated:  March 29, 2016                    s/Mark A. Goldsmith
Detroit, Michigan                         MARK A. GOLDSMITH
                                          United States District Judge



## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2016.

                                          s/Karri Sandusky
                                          Case Manager